UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL SAIDOCK :
    *Plaintiff*, :
                  :
v. : No. 3:19-CV-1319 (KAD)
                  :
TANESHA CARRINGTON-McCLAIN, et al.:
    *Defendants*. : September 16, 2019

## INITIAL REVIEW ORDER

**Procedural History**

On March 11, 2019, Plaintiff, Daniel Saidock, a pretrial detainee confined at the Bridgeport Correctional Center ("BCC"), filed a complaint *pro se* under 42 U.S.C. § 1983, against three Department of Correction ("DOC") medical officials for acting with deliberate indifference to his serious medical needs: Nurse Tanesha Carrington-McClain, Dr. Vicki Blumberg, and Dr. Susannah Tung. *Saidock v. McClain*, No. 3:19-CV-368 (VLB). The Court, *Bryant, J.*, dismissed the complaint because it was clear on the face of the complaint and attached exhibits that Plaintiff had failed to exhaust his administrative remedies. *See id.*, Initial Review Order (DE#14) at 11.[1] On August 27, 2019, Plaintiff filed the instant action against the same three defendants and one additional defendant: Dr. George L. Bozzi. Compl. (DE#1). He claims that he has properly exhausted his administrative remedies with respect to all four defendants and is restating his claim for deliberate indifference to medical needs. *Id.* at 6, 18-20. Plaintiff also filed a motion for preliminary injunctive relief and a motion for appointment of

---

[1] In dismissing the complaint Judge Bryant informed Plaintiff that he "may refile his complaint after he properly exhausts his administrative remedies." *Id.*, Order Denying Mot. to Amend J. (DE#18).

counsel. *Id.* at 25-16; Mot. for Appointment of Counsel (DE#3). On August 28, 2019, Magistrate Judge William I. Garfinkel granted Plaintiff's motion to proceed *in forma pauperis*. *See* DE#7. For the following reasons, the Court will dismiss the Complaint in part.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a Defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the Defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**Allegations**

In March of 2012, Plaintiff underwent three surgeries for a total removal of his colon. Compl. ¶ 1. He was diagnosed with ulcerative colitis, toxic megacolon, and septic shock. *Id.* Two years later, he underwent two additional surgeries, which removed

his rectum and part of his small intestine. *Id.* at ¶ 2. He was then diagnosed with enterocolitis, rheumatoid arthritis, and fibromyalgia. *Id.* at ¶ 3.

In January 2016, after he was remanded to DOC custody, Plaintiff underwent surgery for an inflamed hernia which was caused by MRSA. Compl. at ¶ 4. After the surgery, Plaintiff lost a lot of weight, and the inflammation returned nine months later. *Id.* at ¶ 5. In late October 2016, he complained to Dr. Blumberg, who initially did not offer him any treatment. *Id.* Two days later, however, Plaintiff was unable to stand or walk because of the extreme pain caused by the inflammation, and Dr. Blumberg sent him to the emergency room at UConn Health Care Center ("UConn"). *Id.* at ¶ 6.

Plaintiff underwent minor surgery at UConn, and it was determined that the inflammation was caused by MRSA. Compl. ¶ 7. He was fed intravenously with a low residue diet for seven days and experienced extreme weight loss. *Id.* at ¶¶ 8-9. A low residue diet is necessary for individuals suffering from irritable bowel syndrome ("IBS"), ulcerative colitis, and Crohn's Disease. *Id.* at ¶ 42. Plaintiff was released back to BCC on November 10, 2016. *Id.* at ¶ 10.

Rather than continuing his low residue diet at BCC, Nurse Carrington-McClain and Dr. Blumberg issued Plaintiff a high protein meal tray. Compl. ¶ 10. Both Defendants told Plaintiff that they did not have the ability to issue him a low residue diet. *Id.* Plaintiff explained to them that he was unable to eat most of the food on the tray and that he could not digest any fruits, vegetables, processed meats, or other high-fiber foods. *Id.* Nurse Carrington-McClain told him to just pick through the tray and eat what he could, but Plaintiff could not eat anything on the tray. *Id.* at ¶¶ 10-11.

Plaintiff wrote a request to Dr. Blumberg and verbally informed her how important it was for him to receive a low residue diet. Compl. ¶ 12. He also spoke with some kitchen employees, who told him that there was a low residue diet available at BCC. *Id.* at ¶¶ 12-13. Plaintiff submitted another written request to Nurse Carrington-McClain and asked her to call the kitchen regarding the diet. *Id.* at ¶ 13. Nurse Carrington-McClain later responded that she had spoken with kitchen staff, which confirmed that there was no low residue diet available. *Id.*

Plaintiff has been deprived of a low residue diet for over two and one-half years, despite numerous written requests. Compl. ¶¶ 14-15. At times, he tried to eat some of the food on the regular meal tray, but he became ill and ended up vomiting or defecating multiple times per day. *Id.* at ¶¶ 20-22. He was forced to purchase his own food through the commissary. *Id.* at ¶ 23.

At one point, the kitchen supervisor at BCC came to Plaintiff's cell and told him that he could receive a low residue diet if medical staff would only approve it for him. Compl. ¶ 17. The supervisor memorialized his statement in a response to a written inmate request. *Id.*; Pl.'s Ex. C-12 (DE#1 at 31).

Plaintiff continued to ask medical to approve a low residue diet for him, but Nurse Carrington-McClain told him that he "just ha[d] to deal with it. This is jail." Compl. ¶ 27. After two and one-half years of being denied a low residue diet, Plaintiff began filing grievances and seeking legal action against Nurse Carrington-McClain and Dr. Blumberg. *Id.* at ¶¶ 29-31. Eventually, Dr. Blumberg approved Plaintiff for a low residue diet and apologized multiple times for not approving the diet sooner. *Id.* at ¶ 32.

Although the food trays that were issued to him were classified as "low residue," they contained food items that were not low-residue and often contained fish to which Plaintiff is allergic. Compl. ¶ 46. As a result, Plaintiff continued to file requests and grievances seeking a true, low residue meal plan. *Id.*

During the same two and one-half years of requesting a low residue diet, Plaintiff also submitted written requests to Nurse Carrington-McClain, Dr. Blumberg, and Dr. Tong about the use of "CTU" vans for medical and court transports. Compl. ¶ 52. Although he had been approved for CTU transport in 2015, the vans became less available over time. *Id.* at ¶¶ 52-54. At one point, Nurse Carrington-McClain told Plaintiff that there were only 2 CTU vans, which were not enough to accommodate all inmates with medical conditions. *Id.* at ¶ 54.

As a result, Plaintiff was forced to ride in regular marshal trucks for court trips with no room to stand up or move around and no ventilation. Compl. ¶ 55. On average, the are ten inmates handcuffed together in the truck, and none of them are permitted to exit the truck to use the bathroom. *Id.* at ¶ 56. At times when arriving back at BCC, the inmates including Plaintiff would have to wait inside the truck for hours before they can exit. *Id.* Plaintiff, who wears a diaper and experiences ten to fifteen bowel movements per day because of his medical condition, often is forced to defecate while inside the truck because he does not have access to a toilet. *Id.* at ¶¶ 54, 70. Plaintiff filed grievances and attempted to notify the warden about the transport situation but was not able to obtain any relief. *Id.* at ¶¶ 59-65.

**Discussion**

Plaintiff is suing the Defendants for acting with deliberate indifference to his medical needs in violation of his Eighth Amendment protection against cruel and unusual punishment. Compl. at 19-20. Because Plaintiff was, at all relevant times, a pretrial detainee and not a sentenced prisoner, his claim must be analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To prevail on a Fourteenth Amendment claim that officials acted with deliberate indifference to medical needs, a Plaintiff

> must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Taylor v. City of New York*, No. 3:16-CV-7857 (NRB), 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (quoting *Darnell*, 849 F.3d at 35); *see also Garcia v. University of Conn. Health Care Ctr.*, No. 3:16-CV-852 (JCH), 2018 WL 5830840, at *9 (D. Conn. Nov. 7, 2018).

Construed liberally, the allegations set forth above state a plausible Fourteenth Amendment claim against Dr. Blumberg and Nurse Carrington-McClain. Plaintiff asserts that they repeatedly, and without excuse or justification, denied him access to a low residue diet and CTU transports, despite his serious medical condition. The Court will permit the Fourteenth Amendment claim to proceed against these two Defendants in their individual and official capacities.[2]

---

[2] The Court takes no position on whether Plaintiff has exhausted his administrative remedies.

Plaintiff has not, however, stated a plausible Fourteenth Amendment claim against Dr. Tung.  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The only allegation against Dr. Tung regarding the denial of the low residue diet or CTU transports is that Plaintiff sent her an inmate request on February 23, 2019 requesting her help in procuring a CTU transport, to which there was no response.  Compl. ¶ 52; Pl.'s Ex. E-24 (DE#1 at 45). The failure of an official to respond to a letter or grievance is, alone, insufficient to show personal involvement.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (two letters sent to supervisor defendant and defendant's brief response do not demonstrate requisite personal involvement for § 1983 claim); *Lebron v. Semple*, No. 3:18-CV-1017 (JAM), 2018 WL 3733972, at *4 (D. Conn. Aug. 6, 2018) ("Courts have held that [a] failure to respond to a letter of complaint does not constitute the personal involvement necessary to maintain a [§] 1983 claim") (quoting *Richardson v. Department of Correction*, No. 10-CIV-6137 (SAS), 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011)).  Therefore, any claim that Dr. Tung acted with deliberate indifference to Plaintiff's medical condition by failing to respond to his request for a CTU transport is factually insufficient and is, hereby DISMISSED.

In addition to the claims regarding the denial of a low residue diet and CTU transports, Plaintiff alleges facts in support of separate claims against Dr. Tung and Dr. Bozzi for the deprivation of adequate mental health, optometric, and dental care.  *See* Compl. at ¶¶ 81-154. The Court does not herein, in light of the following, include a

recitation of these lengthy and detailed claims. These allegations and the claims they support appear entirely unrelated to the claims against Dr. Blumberg and Nurse Carrington-McClain. Federal Rule of Civil Procedure 20(a)(2) permits joinder of claims against multiple defendants only if two criteria are satisfied: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences; and (2) "any question of law or fact common to all defendants will arise in the action." While the claims against all four Defendants present a common question of law, they are based on completely distinct factual narratives. There are insufficient allegations that Dr. Bozzi's denial of adequate dental care and Dr. Tung's denial of adequate mental health treatment were in any related to Dr. Blumberg's and Nurse Carrington-McClain's denial of a low residue diet and CTU transports. Therefore, the claims against Dr. Tung and Dr. Bozzi are DISMISSED as improperly joined. Plaintiff may pursue these claims in a separate action.

**Declaratory Relief**

In addition to damages and injunctive relief, Plaintiff seeks "a declaration that the acts and omissions [of Defendants] violated [his] rights under the Constitution and laws of the [United States]." Compl. at 21. Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). Plaintiff has not identified any legal relationships or issues that require resolution by prospective declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, the request for declaratory relief is DISMISSED.

**Motion for Preliminary Injunctive Relief**

Attached to Plaintiff's Complaint is an "Order to Show Cause for a[] Preliminary Injunction." Compl. at 25-26. He seeks a preliminary order for Defendants "[t]o stop denying [his] special diet that his health requires . . . [and] his approved special transport." *Id.* at 25. Preliminary injunctive relief is an extraordinary remedy and is never awarded as a matter of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Johnson v. Newport Lorillard*, No. 01-Civ-9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003). A movant seeking a preliminary injunction must establish (1) irreparable harm in the absence of the injunction, and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984). In this case, the current record consists solely of a Complaint and is insufficient to satisfy Plaintiff's burden of proof. The Court cannot determine whether such preliminary injunctive relief is warranted. Therefore, Plaintiff's request for preliminary injunctive relief is DENIED without prejudice to refiling after Defendants have been served, appeared and had an opportunity to respond to the Complaint.[3]

**Motion for Appointment of Counsel**

Plaintiff has also filed a motion for appointment of counsel to represent him in this case. Mot. for Appointment of Counsel (DE#3). He claims that he has no income, is

---

[3] While it is not clear, to the extent Plaintiff seeks a Preliminary Injunction or Temporary Restraining order on an ex parte basis without notice to the Defendants, his motion does not meet the vigorous requirements of Rule 65 for such extraordinary relief.

9

presently incarcerated, and has contacted at least five attorneys seeking representation but has not been successful.  *Id.* at 2-5.

"District courts exercise substantial discretion in deciding whether to appoint counsel . . . ."  *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003).  The Second Circuit has cautioned against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989).  Before appointment is even considered, the indigent movant must establish that he is unable to obtain counsel.  *Id.* at 173; *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  If the movant satisfies that threshold requirement, the Court must then consider the merits of his claim(s) and determine whether his position "seems likely to be of substance."  *Hodge*, 802 F.2d at 61.  If so, the Court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the movant's apparent ability to present the case, and the complexity of the legal issues involved.  *Id.* at 61-62.

The current record, which consists solely of a Complaint, is insufficient for this Court to determine whether Plaintiff's claims are sufficiently meritorious to warrant the appointment of *pro bono* counsel.  Therefore, the motion is DENIED without prejudice subject to refiling at a later stage of litigation.

**Orders**

(1) The Fourteenth Amendment claim for deliberate indifference to serious medical needs may proceed against Nurse Carrington-McClain and Dr. Blumberg in their individual capacities for damages and in their official capacities for injunctive relief.  All

other claims are DISMISSED. The clerk is directed to terminate Dr. Tong and Dr. Bozzi as defendants to this action.

(2) The motion for preliminary injunctive relief (DE#1 at 25) and motion for appointment of counsel (DE#3) are DENIED without prejudice.

(3) The clerk shall prepare a summons form and send an official capacity service packet, including the Complaint, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on Defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before October 7, 2019 and file a return of service on or before October 16, 2019. The clerk shall verify the current work address for Nurse Carrington-McClain and Dr. Blumberg with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to them at the confirmed addresses on or before October 7, 2019, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If either Defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on her, and she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(5) Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they

shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed on or before April 16, 2020. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed on or before May 16, 2020.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of September 2019.

_____/s/_____
Kari A. Dooley
United States District Judge