UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL SAIDOCK, | : |
|     Plaintiff, | : |
| | : |
| v. | :    3:19cv1319 (KAD) |
| | : |
| NURSE TANESHA | : |
| CARRINGTON-MCCLAIN, | : |
| DR. VICKI BLUMBERG, | : |
|     Defendants. | : |

## RULING ON DEFENDANTS' MOTION TO DISMISS [ECF NO. 18]

On August 27, 2019, Plaintiff Daniel Saidock filed this action *in forma pauperis* and *pro se* under 42 U.S.C. § 1983 against *inter alia,* Nurse Tanesha Carrington-McClain and Dr. Vicki Blumberg.[1] Compl., ECF No. 1. Upon initial review, the court permitted Plaintiff's Fourteenth Amendment claims arising out of the defendants' failure to prescribe a low residue diet and CTU transports to proceed. ECF No. 20 at 6. On November 13, 2019, Defendants filed a motion to dismiss on the basis of (1) the lack of personal service upon Dr. Blumberg and (2) the Plaintiff's failure to exhaust his administrative remedies. Dr. Blumberg has since been served personally. The Court therefore only considers Defendants' arguments regarding Plaintiff's failure to exhaust his administrative remedies. Plaintiff did not respond to the motion to dismiss. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

---

[1] Plaintiff had previously filed a similar complaint against Nurse Carrington-McClain, Dr. Blumberg, and Dr. Tung on March 11, 2019. *Saidock v. McClain*, No. 3:19-CV-368 (VLB). The Court, *Bryant, J.*, dismissed the complaint on the basis of Plaintiff's failure to exhaust his administrative remedies available under DOC Administrative Directive 9.6. *See id.*, Initial Review Order, ECF No 14 at 11.

1

**STANDARD OF REVIEW**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). [D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint,[2] or matters of which the Court can take judicial notice. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief."

---

[2] A document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect . . . ." C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

*Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted). So too must a *pro se* litigant be able "to allege facts demonstrating that her claims arise under this Court's ... jurisdiction." *Gray v. Internal Affairs Bureau*, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003). Absent such a showing the "complaint must be dismissed." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

**FACTUAL ALLEGATIONS**

The Court accepts the factual allegations of the complaint as true, and they are as follows.

In March of 2012, Plaintiff underwent three surgeries for a total removal of his colon. Compl. ¶ 1. He was diagnosed with ulcerative colitis, toxic megacolon, and septic shock. *Id.* Two years later, he underwent two additional surgeries, which removed his rectum and part of his small intestine. *Id.* at ¶ 2. He was then diagnosed with enterocolitis, rheumatoid arthritis, and fibromyalgia. *Id.* at ¶ 3.

In January 2016, after he was remanded to DOC custody, Plaintiff underwent surgery for an inflamed hernia which was caused by MRSA. *Id*. at ¶ 4. After the surgery, Plaintiff lost a lot of weight, and the inflammation returned nine months later. *Id.* at ¶ 5. In late October 2016, he complained to Dr. Blumberg, who initially did not offer him any treatment. *Id.* Two days later, however, Plaintiff was unable to stand or walk because of the extreme pain caused by the inflammation, and Dr. Blumberg sent him to the emergency room at UConn Health Care Center ("UConn"). *Id.* at ¶ 6. Plaintiff underwent minor surgery at UConn, and it was determined that the inflammation was caused by MRSA. *Id*. at ¶ 7. He was fed intravenously with a low residue diet for seven days and experienced extreme weight loss. *Id.* at ¶¶ 8-9. A low

residue diet is necessary for individuals suffering from irritable bowel syndrome ("IBS"), ulcerative colitis, and Crohn's Disease. *Id.* at ¶ 42. Plaintiff was released back to BCC on November 10, 2016. *Id.* at ¶ 10.

Rather than continuing his low residue diet at BCC, Nurse Carrington-McClain and Dr. Blumberg issued Plaintiff a high protein meal tray. *Id*. at ¶ 10. Both Defendants told Plaintiff that they did not have the ability to issue him a low residue diet. *Id.* Plaintiff explained to them that he was unable to eat most of the food on the tray and that he could not digest any fruits, vegetables, processed meats, or other high-fiber foods. *Id.* Nurse Carrington-McClain told him to just pick through the tray and eat what he could, but Plaintiff could not eat anything on the tray. *Id.* at ¶¶ 10-11.

Plaintiff wrote a request to Dr. Blumberg and verbally informed her how important it was for him to receive a low residue diet. *Id*. at ¶ 12. He also spoke with some kitchen employees, who told him that there was a low residue diet available at BCC. *Id.* at ¶¶ 12-13. Plaintiff submitted another written request to Nurse Carrington- McClain and asked her to call the kitchen regarding the diet. *Id.* at ¶ 13. Nurse Carrington-McClain later responded that she had spoken with kitchen staff, which confirmed that there was no low residue diet available. *Id.*

Plaintiff has been deprived of a low residue diet for over two and one-half years, despite numerous written requests. *Id*. at ¶¶ 14-15. At times, he tried to eat some of the food on the regular meal tray, but he became ill and ended up vomiting or defecating multiple times per day. *Id.* at ¶¶ 20-22. He was forced to purchase his own food through the commissary. *Id.* at ¶ 23.

4

At one point, the kitchen supervisor at BCC came to Plaintiff's cell and told him that he could receive a low residue diet if medical staff would only approve it for him. *Id*. at ¶ 17. The supervisor memorialized his statement in a response to a written inmate request. *Id.* & 31.

Plaintiff continued to ask medical to approve a low residue diet for him, but Nurse Carrington-McClain told him that he "just ha[d] to deal with it. This is jail." *Id*. at ¶ 27. After two and one-half years of being denied a low residue diet, Plaintiff began filing grievances and seeking legal action against Nurse Carrington-McClain and Dr. Blumberg. *Id.* at ¶¶ 29-31. Eventually, Dr. Blumberg approved Plaintiff for a low residue diet and apologized multiple times for not approving the diet sooner. *Id.* at ¶ 32.

Although the food trays that were issued to him were classified as "low residue," they contained food items that were not low-residue and often contained fish to which Plaintiff is allergic. *Id*. at ¶ 46. As a result, Plaintiff continued to file requests and grievances seeking a true, low residue meal plan. *Id.*

During the same two and one-half years of requesting a low residue diet, Plaintiff also submitted written requests to Nurse Carrington-McClain, Dr. Blumberg, and Dr. Tong about the use of "CTU" vans for medical and court transports. *Id*. at ¶ 52. Although he had been approved for CTU transport in 2015, the vans became less available over time. *Id.* at ¶¶ 52-54. At one point, Nurse Carrington-McClain told Plaintiff that there were only 2 CTU vans, which were not enough to accommodate all inmates with medical conditions. *Id.* at ¶ 54. As a result, Plaintiff was forced to ride in regular marshal trucks for court trips with no room to stand up or move around and no ventilation. *Id*. at ¶ 55. On average, there are ten inmates handcuffed together in the truck, and none of them are permitted to exit the truck to use the

bathroom. *Id.* at ¶ 56. At times when arriving back at BCC, the inmates including Plaintiff would have to wait inside the truck for hours before they can exit. *Id.* Plaintiff, who wears a diaper and experiences ten to fifteen bowel movements per day because of his medical condition, often is forced to defecate while inside the truck because he does not have access to a toilet. *Id.* at ¶¶ 54, 70. Plaintiff filed grievances and attempted to notify the warden about the transport situation but was not able to obtain any relief. *Id.* at ¶¶ 59-65.

Additional facts gleaned from the attachments to the Complaint shall be discussed as necessary.

**DISCUSSION**

Defendants maintain that Plaintiff has failed to exhaust his administrative remedies pursuant to Administrative Directive 8.9. The Court notes at the outset that the Defendants direct their arguments solely to Plaintiff's Fourteenth Amendment claim arising out of the alleged failure to provide him a low residue diet. The Defendants do not address the Plaintiff's claim arising out of the Defendants' failure to provide him with CTU transport, which claim the Court also permitted upon initial review.[3]

The Prison Litigation Reform Act of 1996 ("PRLA"), which governs actions brought by prison inmates, requires prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[4] 42 U.S.C. 42 US.C. § 1997e(a). Failure to exhaust is an affirmative defense under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e, and inmates

---

[3] The Defendants seek dismissal of the entire action which would indicate that the Defendants mistakenly believe that the issue regarding a low residue diet is the only basis upon which the Plaintiff seeks relief.
[4] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

need not plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 217 (2007). A defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment."). Thus, the issue of exhaustion is generally more appropriate for consideration on a motion for summary judgment. *See Paschal-Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *3 (D. Conn. June 28, 2019). However, a court may consider material extrinsic to the pleadings on a motion to dismiss for nonexhaustion without converting the motion pursuant to Federal Rule of Civil Procedure 12(d) because exhaustion is an integral part of a prisoner's claim. *See Allen v. Kunkel*, No. 3:18-CV-297 (JCH), 2018 WL 3553335, at *4 (D. Conn. July 23, 2018).

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95.

It is not sufficient for a plaintiff to exhaust his administrative remedies after filing his complaint; plaintiff must exhaust his administrative remedies prior to filing the action in federal

court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, 2019 WL 260356, at *3 (D. Conn. June 25, 2019).

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Defendants argue that Plaintiff has failed to satisfy his exhaustion requirement as to the claim that Nurse Carrington-McClain and Dr Blumberg failed to provide him a low residue diet because he has not utilized the administrative remedies for review of health services that are available under DOC Administrative Directive 8.9. Administrative Directive 8.9 provides for two types of "Health Services Review": (1) Diagnosis and treatment, which include a decision not to provide treatment; and (2) Review of an Administrative Issue, which addresses concerns

8

of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9 § 9.

Pursuant to Section 10 of Administrative Directive 8.9, both types of grievances require an inmate to seek informal resolution of "the issue face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." According to Section 10, a response to the inmate request should be provided within fifteen calendar days from receipt of a written request.

Thereafter, an inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful." A.D. 8.9 § 11. The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box. *Id.* Upon receipt of CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider. A.D. 8.9 § 11(A). "If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the health services review." A.D. 8.9 § 11(A). "The physician shall notify the inmate of the decision, in writing, within ten business days by indicating 'No Further Action' in the disposition field of CN 9602, Inmate Administrative Remedy Form." *Id.* "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the [URC] for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate[.]" A.D. 8.9 § 11(B).

Defendants first argue that Plaintiff admitted that he has not fully exhausted his administrative remedies when he sent a letter to Judge Bryant on March 21, 2019 in connection

9

with the dismissal of his prior case. The Defendants next argue that the Plaintiff has not shown that he exhausted his administrative remedies under Administrative Directive 8.9. ECF No. 18-1 at 10-12. On these issues, additional facts gleaned from the attachments to the Complaint are necessary.

Attached to the Complaint, is an Inmate Request Form CN 9601 dated January 18, 2019 in which the Plaintiff asks Dr. Blumberg for a low residue diet. Compl., ECF No. 1, at 29. Also attached is a Form CN 9602 dated March 12, 2019 seeking, *inter alia,* a Health Services Review of Dr. Blumberg's failure to issue a low residue diet. *Id.* at 32. In the Form CN 9602, Plaintiff checked the box in Section B, indicating that he was requesting a Health Services Review ("HSR") for "Diagnosis/Treatment." *Id.* at 32. In Section 4, under the directions to "[p]rovide any factual information that is applicable, including any responses from staff[,]" Plaintiff stated, *inter alia*, "[t]his is against Dr. Blumberg for denying me a special medical diet which my medical condition requires. Eating regular food causes me pain & suffering. Dr. Blumberg knows this & still denys (sic) me proper medical attention." *Id.* at 33. He also states that he had filed an inmate request but it had not been responded to within fifteen days and that he requested that Dr. Blumberg order a low residue medical diet. *Id.* In addition, on April 23 and June 5, 2019, Plaintiff filed Level 2 and Level 3 appeals, complaining that his HSR had not received a response.[5] *Id.* at 34.

---

[5] In his Level 2 statement, Plaintiff also indicated that Dr. Blumberg had granted him the low residue diet.

In support of their first argument, that Plaintiff has admitted to his failure to exhaust, Defendants cite to Plaintiff's letter (attached to the instant complaint) written to Judge Bryant in connection with his prior federal complaint. ECF No. 18-1 at 10. In the letter, Plaintiff states:

> On 3/21/2019, I received a paper with the title Grievances returned without disposition. They check box 1. ...They sent all my grievances back and want me now to file requests. The defendants are not allowing me to exhaust my remedies.

ECF No. 1 at 58. Defendants first assert that Plaintiff incorrectly described his HSRs as grievances and thereafter admitted that he has not exhausted his remedies by stating that they had been returned for failure to file the inmate request forms. ECF No. 18-1 at 10.

This argument is specious. First, the idea that the court would substitute what the Defendants' think the Plaintiff meant to say, and then use those substituted words as an admission borders on the absurd. Second, the attachments to the Complaint, while evincing some confusion on the part of the Plaintiff in his correspondence to Judge Bryant, reveal that it was likely not the HSRs to which he refers, but rather, his separate grievances filed pursuant to Directive 9.6.

In a separate Inmate Administrative Remedy Form CN 9602 also dated March 12, 2019, the Plaintiff checked the box in Section A, indicating that he was filing a Grievance, *Id.* at 51, as opposed to the box in Section B which is used for a Health Services Review. Section A instructs inmates that prior to filing a grievance, the inmate "must attempt informal resolution[,]" and "[a]ttach a copy of CN 9601, Inmate Request Form with the staff member's response **OR** state in Section 4 the reason why the form is not attached." *Id.* This grievance complained that Nurse Carrington-McClain had not processed three of his HSRs and he requested that she do so. *Id.* at 52.

Thereafter, the Plaintiff received a Grievance Returned Without Disposition Form CN 9606 dated March 21, 2019, which stated, "in accordance with Administrative Directive 9.6," his grievance was returned without disposition. *Id.* at 55. On this Form CN 9606, Box 1 was checked to indicate that his grievance had been returned for failure to comply with the requirements to attempt informal resolution and to attach the CN 9601, Inmate Request Form, or explain why the form was not attached. *Id.* at 55. Of note, attachment of the CN 9601 is not required when filing a Health Services Review pursuant to Administrative Directive 8.9. Administrative Directive 9.6 has different requirements than Administrative Directive 8.9 and are not germane to this case. *Urbanski v. Dep't of Correction*, No. 3:18-CV-01323(VLB), 2019 WL 6683047, at *3 (D. Conn. Dec. 5, 2019) (distinguishing administrative remedies provided Administrative Directive 8.9 from that provided under Administrative Directive 9.6).

In sum, there is no basis upon which to find that the Plaintiff admitted that he failed to exhaust his administrative remedies in his letter to Judge Bryant on March 21, 2019.

Nor is the record before the Court clear that the Plaintiff failed to exhaust his Health Services Review remedies with respect to his claims against Dr. Blumberg. He submitted informal requests on Form CN 9601. He filed a Form CN 9602 request for Health Services Review on March 12, 2019. He alleges that no one ever responded to his requests. He thereafter filed appeals in which he complains that his requests for Health Services Review went unanswered.

Thus, construed most favorably to Plaintiff, the Court cannot conclude at this stage of the proceedings that the Plaintiff failed to exhaust his administrative remedies.   In addition, the Complaint, raises the inference that the exhaustion process in this case may have "operated as a

12

simple dead end," *Ross*, 136 S. Ct. at 1859-60, or that Plaintiff may have been purposefully thwarted in his ability to exhaust his administrative remedies by the DOC staff. *Id.* Accordingly, the motion to dismiss the Fourteenth Amendment claim against Dr. Blumberg for denial of the low residue diet is denied.

However, as Defendants point out, Plaintiff's HSR filed on March 12, 2019 only refers to Dr. Blumberg's failure to provide him with a low residue diet. Thus, it is clear from the face of the complaint and its attachments that Plaintiff has not exhausted his administrative remedy on his claim against Nurse Carrington-McClain for denial of the low residue diet.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss [ECF #18] is GRANTED in part and DENIED in part. Plaintiff's Fourteenth Amendment claim against Nurse Carrington-McClain based on denial of the low residue diet is DISMISSED. The motion is otherwise denied.

Defendants are not precluded from filing a motion for summary judgment arguing that Plaintiff has failed to exhaust his administrative remedies as required under the PLRA.

**SO ORDERED** this 18th day of May 2020, at Bridgeport, Connecticut.

___/s/_____
Kari A. Dooley
United States District Judge